IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAAP INDUSTRIES,<br><br>                Plaintiff,<br><br>       vs.<br><br>BURNS & McDONNELL ENGINEERING COMPANY, INC.,<br><br>                Defendant.<br>_____/ | CASE NO. CV F 06-0417 LJO TAG<br><br>**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff KAAP Industries ("KAAP") moves for summary judgment or partial summary judgment against Defendant Burns & McDonnell Engineering Company, Inc. ("B & M") on the ground that there is no material issue of fact that plaintiff is entitled to judgment as a matter of law. Plaintiff filed its notice of motion on July 24, 2007. Defendant Burns & McDonnell filed its opposition on August 10, 2007. Plaintiff filed its reply on August 20, 2007. Pursuant to Local Rule 78-230(h), this matter was submitted on the pleadings without oral argument and the hearing was VACATED. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

**FACTUAL BACKGROUND**

**Plaintiff's Position:**  Plaintiff claims that, under the terms of the Individual Professional Consultant Agreement ("IPCA"), KAAP agreed to provide consulting services to B & M regarding commercial opportunities for energy services work**.** KAAP was to target the County of Fresno to introduce the County to the concept of energy savings performance projects. Pursuant to the terms of the IPCA, KAAP was to receive five percent (5%) of the contract amount awarded to B & M. Plaintiff

1  claims that B & M was initially awarded second position for the performance contract, however, within
2  30 days of the original award, the County awarded the project to B & M. Plaintiff contends that the
3  change was the direct result of Plaintiff's continued efforts on behalf of B & M. On September 9, 2003,
4  the Fresno County Board of Supervisors authorized a letter of intent to be issued to B & M reflecting
5  its intent to enter into an energy savings performance contract. On July 27, 2004, B & M the County of
6  Fresno executed the performance contract. The contract amount of the project awarded to B & M was
7  $12,034,276.00.

8  KAAP contends that a total of $601,713.00 is due it from B & M for consulting services
9  provided pursuant to the IPCA. Plaintiff contends that B & M breached the IPCA and has engaged in
10 a number of actions designed to reduce its overall payment obligation. B & M paid KAAP the total of
11 $150,000.00 in three (3) payments.

12 **Defendant's Position:** When B & M entered into the agreement with plaintiff in November of
13 2002, the parties anticipated that an agreement would be entered into with the County shortly thereafter
14 and that the project would be underway within 12 months of the November 2002 date. A one year time
15 frame was the sole motivation for B & M entering into the agreement with KAAP. The agreement with
16 Plaintiff was to be fulfilled no later than November 9, 2003, the express termination date of the
17 agreement. On September 9, 2003, the County of Fresno issued a Letter of Intent to B & M which
18 allowed them to proceed with performing a limited engineering study, known as a Comprehensive
19 Energy Assessment. B & M was to be paid $91,600 by the County for performing the energy
20 assessment. The Letter of Intent also indicated that the County may, but was not necessarily obligated
21 to, enter into a subsequent agreement for the design and construction of an energy conservation facility
22 for the Fresno County Jail. Eventually an Energy Services Agreement was entered into between B &
23 M and the County of Fresno. Although that agreement was entered into on July 27, 2004, it did not
24 become effective until the County advised that it had received funding on October 14, 2004.

25 Defendant claims that Plaintiff breached the agreement between the parties on the basis that, inter
26 alia:

27     (1)  Plaintiff failed to initially secure the project from the County of Fresno for B & M;
28     (2)  Plaintiff failed to perform in accordance with the contract documents;

    (3) The only "agreement" entered into between the County of Fresno and B & M during the term of the agreement between Plaintiff and Defendant was the Letter of Intent authorizing payment to B & M in the amount of $91,600 for a Comprehensive Energy Assessment; and

    (4) The contract between Plaintiff and Defendant had expired by its own terms prior to the County of Fresno and B & M entering into the Energy Services Agreement.

  In addition, Defendant claims that the parties discussed, and eventually entered into, a compromise agreement. In or about November of 2003, B & M offered to pay KAAP the sum of $150,000 as full and complete settlement of all issues and claims arising out of and related to the agreement between the parties.

  **Missouri Law Applies:** The IPCA provides that the law of Missouri governs the contract. The parties do not dispute that Missouri law applies.

## ANALYSIS AND DISCUSSION

**A. Summary Judgment Standard**

  On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); *Loeh v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

  "As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the

3

court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     When Plaintiff is the Moving Party**

The parties dispute plaintiff's burden, as the moving party, in this motion. Defendant argues that summary judgment must be denied because plaintiff failed to disprove each and every of defendant's affirmative defenses. Plaintiff argues that it does not have to disprove all affirmative defenses and that it must produce admissible evidence only on matters on which plaintiff bears the burden of proof at trial.

When plaintiff is the moving party, plaintiff's burden of proof is: (1) to demonstrate affirmatively (by admissible evidence) that there is no genuine issue of material fact as to each element of its claim for relief, entitling it to judgment as a matter of law; and (2) to demonstrate the lack of any genuine issue of material fact as to affirmative defenses asserted by the defendant. Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed Civ. Pro. Before Trial,* §14:140 (the Rutter Group 2007); *see also* Wright, Miller & Kane, *Federal Practice and Procedure,* §2734, p. 256. According to these practice guides, plaintiff must establish not only the elements of its claim, by undisputed material facts, but also that the defendants' affirmative defenses do not raise triable issues of fact.

The parties did not cite to any controlling case authority on plaintiff's burden of proof. *See*

4

*Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076 (D.C.Del.1990) (the Court was not precluded from granting summary judgment for plaintiff by the fact that affirmative defenses, which were not addressed by either party in motions for summary judgment, were preserved in the pleadings; defendants failed to point to any specific facts that would raise genuine dispute as to affirmative defenses, on which they would have the burden of proof at trial.); *Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148, 160 (D.C.Cal.1981) (plaintiff moved for partial summary judgment on one of defendant's affirmative defenses - "A plaintiff may, of course, test the sufficiency of a defense by motion for summary judgment [citations omitted]. Where plaintiff seeks summary judgment on the question of liability, the plaintiff must initiate the inquiry by demonstrating that there is no material fact in issue as to the affirmative defense and that it is insufficient as a matter of law"), *rev'd on other grounds*, 691 F.2d 873 (9th Cir.1982).

This Court, however, need not resolve whether plaintiff's burden includes disproof of each affirmative defense, or merely proof of its own *prima facie* case. Defendant has raised issues of fact.

**C.   Issues of Fact**

**1.   Term of the Contract**

The parties dispute the operative term of the contract. Defendant argues that the term of the IPCA expired, and therefore, defendant does not owe plaintiff money. Defendant contends the operative term was one year from the date the IPCA was deemed executed on November 9, 2002, and the one year term ran from that date. Plaintiff contends the IPCA was signed by a B&M representative on or about February 11, 2003, was signed by a KAAP representative on or about March 15, 2003 and it ran until the B&M was awarded the contract by Fresno County.

The parties dispute the following IPCA contract language:

> "The term of this Agreement shall be one year, **or** the culmination of one award for energy services to ENGINEER, brought about by consultant's services, and subsequent payment for such services." (Doc. 22, Exh. A) (Emphasis added.)

"[T]he cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Burrus v. HBE Corp.*, 211 S.W.3d 613, 616-617 (Mo.App. E.D. 2006). "[A] court will not resort to construction where the intent of the parties is expressed in clear and

5

1 unambiguous language." Id. At 617.

2 Here, there is a dispute as to the intention of the parties when the contract became effective and a dispute as to the term of the agreement - for one year or longer. Defendant contends that the IPCA was only intended to run for one year. Defendant presents evidence that B & M entered into the IPCA with the 5% commission based on promises that the groundwork had been laid and that the potential project could be underway within a year. (Doc. 33-2; Plaintiff's Response to defendant's disputed facts, no. 69.) Plaintiff, on the other hand, contends that according to the contract language, the "culmination of one award for energy services . .", occurred on July 24, 2004 when the Fresno County Project was executed with B&M on July 24, 2004.

10 Plaintiff cites *Cosby v. Harding* (Mo.App. 1977) 553 S.W.2d 535, 536 for the proposition that the date of November 9, 2002, on the face page of the IPCA is not the "effective date" of the contract. *Cosby* was a legal malpractice case in which the attorney allegedly filed a case outside the statute of limitations based upon the "delivery date" of the contract, not the date the agreement was executed. The Court stated:

> "In the case of a written contract, the time when it is finally executed, or the time of its delivery, is ordinarily deemed to be the time when the contract becomes binding, unless a different intent appears. A date on the writing is generally not conclusive, and if delivery is shown to have been at a different time, that time is deemed to be the date of inception of the contract, unless an intention to other effect is otherwise shown."

19 *Cosby* supports the position that the parties intent must be ascertained.

20 Plaintiff cites *Hulett-McLean, Inc. v. Chris Kaye Plastics Corp.,* 799 S.W.2d 618 (Mo.App.E.D. 1990) for the proposition an automatic termination of the IPCA does not exist under Missouri law. In *Hulett-McLean,* a consultant brought suit for commissions due. The defendant, like B & M here, argued that the commissions were not due because the contract expired before the project was obtained. The court held that, "Unless the contract states otherwise, an agent is entitled to his fee for services performed during the contract period, even though the contingency occurs after termination." *Hulett-McLean*, 799 S.W.2d at 619. The contract between buyer and buyer's representative did not condition buyer's representative's fee on the sale or closing taking place within the contract period.

28 The Court cannot determine as a matter of law that plaintiff is entitled to the commission because

6

there are issues of fact as to the parties' intention. Here, there is a dispute as to the intention of the parties when the contract became effective <u>and</u> a dispute as to the term of the agreement - for one year or longer. Defendant contends that the IPCA was only intended to run for one year. Plaintiff contends otherwise. The parties present conflicting evidence of their intent which precludes summary judgment. There are issues of fact from which a reasonable jury could conclude the intention of the parties was to provide for a termination of the contract.

**2.     Issue of Fact as to Accord and Satisfaction**

Defendant asserted an affirmative defense that the parties entered into an accord and satisfaction. Facts 101-112.) Defendant cites several Missouri cases for accord and satisfaction. For instance, in *Brent v. Westerman*, 123 F.Supp. 835, 837 (D.C.Mo. 1954), the Court stated:

> It is the settled law in Missouri that if there be a controversy between a claimant or creditor and a tortfeasor or debtor and, after discussion of the substance of the claim, the tortfeasor or debtor tenders to the claimant or creditor some amount, upon the condition that its acceptance will be in full settlement of all claims, and the claimant or creditor accepts the tender, an accord and satisfaction results as a matter of law (even though the creditor may protest the adequacy of the amount, or even state other conditions of his acceptance), for the simple and good reason that one who accepts a conditional tender assents to the conditions of the tender."

*See also Cox v. Freeman*, 321 F.2d 887 (8th Cir. 1963) (applying Missouri law) (if, after discussion of the substance of the claim, the debtor tenders to the creditor some amount, upon the condition that its acceptance will be in full settlement of all claims, and the creditor accepts the tender, an accord and satisfaction results as a matter of law.) *Compare Weinberg v. Globe Indem. Co.*, 355 S.W.2d 341, 350 (Mo.App.1962) (The evidence before us shows conclusively that the parties expressly agreed in writing that the delivery and acceptance of the draft constituted payment of plaintiffs' claim as agreed upon in settlement, and that it constituted a 'satisfaction' pursuant to an 'accord'. Such agreement is evidenced (1) by the words printed on the face of the draft: 'in full settlement for all claims for liability' . . .) *And Hall v. Knapp*, 552 S.W.2d 299, 303 (Mo.App.1977) (where a check is accepted as the "means" through which payment may be obtained and not as payment itself, the claim or debt is not extinguished by mere acceptance of the check.)

Plaintiff also cites several Missouri cases for the proposition that an accord and satisfaction did not occur. Generally, there is no accord and satisfaction unless payment is tendered on the express

7

condition that it be accepted in full satisfaction of the claim. " *Cranor v. Jones Co.*, 921 S.W.2d 76, 81 (Mo.App. E.D. 1996). The condition that acceptance means full satisfaction must be made clearly apparent to the creditor. *Id.* In *Cranor*, a Broker's passive acceptance of homebuilder's "final check" for commissions made existence of accord and satisfaction question of fact for jury where there was no accompanying letter setting out condition that check constituted full and final payment, nor any restrictive endorsement. Indeed, the court stated, "Whether an accord and satisfaction has been reached is generally a question of fact." *Cranor v. Jones Co.*, 921 S.W.2d at 81.

In *McKee Const. v. Stanley Plumbing*, 828 S.W.2d 700 (Mo.App.S.D.1992), the Court affirmed summary judgment in favor of the debtor, holding that the creditor, received payment as full and final settlement of his claim. However, the debtor in McKee expressly offered the check as full and final payment of any claim the creditor had against the debtor, by an enclosed letter which accompanied the check and stated in part:

> "Acceptance and negotiation of this check will be considered a full and final release of any claims that he may have against [the debtor]. If [the creditor] does not agree that this is a full and final settlement, please return the enclosed check to me.

*Id.* at 701. By cashing the check, the creditor accepted the debtor's condition that the check constituted full and final payment, despite his later disavowal of an intent to do so. Id. at 706.

Here, it is <u>undisputed</u> that KAAP's representative, Mr. Sherman, accepted three payments of $50,000 each. It is <u>disputed</u>, however, whether his acceptance of the checks resulted in an accord and satisfaction. The representative for defendant, Ms. Thompson, "confirmed" in writing her understanding of their compromise agreement. Her e-mail correspondence to Mr. Sherman stated, in part: "[W]e have agreed to compensation on the Fresno project for $150,000, to be paid in 3 monthly installments of $50,000 beginning March 2005. The original agreement was made between KAAP Industries and Burns & McDonnell on November 9, 2002. That agreement expired on November 9, 2003, with no award or contract." (Doc. 28, Exh B.) No correction was sent by plaintiff. Plaintiff accepted and cashed the three checks. The intent of the parties as to the agreement is in dispute. Accordingly, defendant has raised a material issue of fact in its opposition as to whether there was an accord and satisfaction.

Plaintiff argues there was not any consideration for the alleged accord and satisfaction. Plaintiff

cites *Vilter Mfg. Co. v. Rolaff*, 110 F.2d 491, 498 (C.A.8 1940).  In *Vilter*, the court said that an accord and satisfaction must be supported by consideration. "While the insolvency of a debtor may constitute consideration for the acceptance by a creditor of a sum less than that which is due, the essential element of an accord and satisfaction on that theory is strikingly absent here. It is elementary that there must be a consideration offered and received, either expressly or impliedly. " However, plaintiff points to evidence that B & M's offer of compromise "consisted of $150,000 <u>plus additional monies to be paid to KAAP from other B& M projects</u>." (Doc. 33-1; Plaintiff's Response to defendant's disputed facts, no. 104.)  Accordingly, whether there was an accord and satisfaction is an issue of fact for the finder of fact.

### 3. Breach of the Agreement by Plaintiff

Defendant argues issues of fact as to plaintiff's elements for the breach of contract claim. Defendant presents evidence that plaintiff failed to perform its objectives of the IPCA.

The Court has found at least two material issues of fact which warrant denial of the motion. Therefore, the Court does not reach this issue.

### D.   Case Not Fully Adjudicated on Motion

In its notice of motion, plaintiff requests that this court adjudicate that 35 specific facts are established without substantial controversy as against defendant pursuant to Rule 56(d).

Rule 56(d) allows a district court to "specify[ ] the facts that appear without substantial controversy" and to "direct[ ] such further proceedings in the action as are just."

> "If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

/////

/////

/////

The following material facts are not in genuine issue or dispute. Each fact was listed in the movant's statement of facts, was supported by record evidence, and was not contested by the non-movant. (See Doc. 25, Facts 1-7, 11-13, 18-22, 26, 30-33):

1. Despite misspellings due to typographical errors, there is no doubt that the "KKAP Industries" entity named in the Individual Professional Consultant Agreement (IPCA") is, in fact, one and the same as Plaintiff, KAAP Industries ("KAAP").

2. The contractual business relationship entered into by KAAP with defendant, Burns & McDonnell Engineering Company, ("B & M") was executed by Rick Sherman ("Sherman") Partner of KAAP.

3. The contractual business relationship entered into by KAAP with B & M was executed by Laura Thompson ("Thompson"), principal of B & M and division manager of B & M energy services division.

4. At the time of executing the IPCA, Thompson had the authority to execute a consulting agreement and bind B & M to the terms thereof.

5. At the time of executing the IPCA, Thompson had the authority to make decisions regarding the amount of the consulting costs.

6. As a Partner of KAAP, Sherman, at the time of executing the IPCA, had the authority to execute an consulting agreement and bind KAAP to the terms therefor.

7. The relationship between KAAP and B & M began with an initial meeting between Sherman and Thompson in October of 2002 when Thompson's desire to start an energy services division at B & M and her need to acquire an energy services project was discussed.

11. It was known by the parties that the IPCA specific to an energy service project to be performed for the County of Fresno ("Fresno County Project").

12. The language regarding compensation to be paid under the IPCA was directly related to the Fresno County Project.

13. Thompson created the language of the IPCA relating to the scope of services to be performed by KAAP under the IPCA.

18. The IPCA required KAAP to perform the following services: (1) Provide contact and method

of contact with identified representative requesting energy services; (2) Provide information, in as much as it is obtainable, requested by B & M and required for the energy services proposal; and (3) Coordinate financial arrangements pursuant to customer's preferences for third party financing of the proposed project.

19. Beginning with the initial meeting between Sherman and Thompson in October of 2002, Sherman provided the contract and method of contact information for the identified representatives requesting energy services.

20. Sherman also provided any information requested by B & M regarding the energy services proposal.

21. Sherman provided information regarding financing information requested by B & M.

22. Ultimately, the County of Fresno chose not to use third party financing, therefore the financing information became a non-issue.

26. The total price to be paid to B & M under the Contract, excluding any change orders, requested by the County of Fresno, was $12,034,276.00.

30. Paragraph 10.1 of the IPCA states that the IPCA shall be governed by the laws of the State of Missouri.

31. B & M Board of Directors approval was not required for the execution of a consulting agreement such as the IPCA.

32. Thompson understood that the IPCA was a binding legal contract between the parties.

33. B & M has been paid in full by the County of Fresno for the contract.

Accordingly, these facts are deemed established.

/////
/////
/////
/////
/////
/////

# CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. DENIES plaintiff KAAP Industries motion for summary judgment pursuant to Rule 56(a).

2. GRANTS plaintiff's request, pursuant to Rule 56(d), to deem facts 1-7, 11-13, 18-22, 26, 30-33 established.

IT IS SO ORDERED.

**Dated:   August 27, 2007**                         /s/ Lawrence J. O'Neill
                                                                   UNITED STATES DISTRICT JUDGE