1

2

3

4

5              **IN THE UNITED STATES DISTRICT COURT**

6           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7

8   KAAP INDUSTRIES,                          CASE NO. CV F 06-0417  LJO GSA

9                Plaintiff,                   **ORDER ON PLAINTIFF'S MOTION FOR
                                              CALCULATION OF INTEREST AND ON**
10        vs.                                 **DEFENDANT'S MOTION FOR A NEW
                                              TRIAL**
11  BURNS & McDONNELL ENGINEERING
    COMPANY, INC.,
12
                 Defendant.
13  _____/

14        Two motions are pending before the Court.  In the first motion, defendant Burns & McDonnell

15  Engineering Company, Inc. ("defendant") moves for a new trial on the grounds that:

16        1) The jury's finding that the parties did not enter into an accord and satisfaction is unsupported

17  by or is contrary to the clear weight of the evidence;

18        2) There were errors in three jury instructions on Defendant's affirmative defense of accord and

19  satisfaction (i.e. the instructions did not adequately state Missouri law) which likely misled or confused

20  the jury;

21        3) Plaintiff's counsel's misconduct was prejudicial and justifies a new trial; and

22        4) There was no evidence adduced at trial to support the jury's finding that August 27, 2004, was

23  the date Defendant allegedly breached the contract and, thus, the date for the commencement of interest.

24        Defendant asks that if a new trial is not granted, that a new trial be granted on the issue of

25  damages.  There is no evidence that August 27, 2004 is the date of the alleged breach of contract.

26        In the second motion, plaintiff KAAP Industries ("plaintiff") moves for calculation and inclusion

27  of prejudgment interest on the judgment entered on June 20, 2008.

28

                                              1

# DEFENDANT'S MOTION FOR A NEW TRIAL

## ANALYSIS & DISCUSSION

**A.  Standards for the Motion for New Trial**

The court is empowered to grant a new trial to all or any of the parties on all or part of the issues. Fed.R.Civ.P. 59(a).  Rule 59(a) states in pertinent part: "A new trial may be granted to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . " The district court "enjoys considerable discretion in granting or denying the motion." *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003).  A district court's denial of a motion for new trial will not be overturned absent a clear abuse of discretion—i.e., "only where there is an absolute absence of evidence to support the jury's verdict." *Desrosiers v. Flight Int'l of Florida Inc.*, 156 F.3d 952, 957 (9th Cir. 1998)  (When district court balances and weighs evidence based on proper legal standards, denial is "virtually unassailable").

The grounds raised in the motion for new trial, and the standard of review, are as follows:

### 1.     Verdict against the Clear Weight of Evidence

While substantial evidence supporting the verdict bars a Judgment as a Matter of Law, the Court may grant a new trial if, in its view, the verdict is against the clear weight of the evidence.  *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  In considering a motion for a new trial, the verdict is not presumed correct and the court need not view the evidence in the light most favorable to the party in whose favor the verdict was rendered.  *Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d at 1371.  A verdict may be set aside where after giving full respect to the jury's findings, the judge is "left with the definite and firm conviction that a mistake has been committed by the jury." *Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d at 1371-72.  The court must weigh the evidence and assess for itself the credibility of witnesses and may set aside the verdict of the jury even though supported by substantial evidence.  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  A new trial may be granted if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

**2.      Erroneous jury instruction**

Erroneous jury instructions are grounds for a new trial unless the error is harmless. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  Where the court's instruction misleads the jury as to the correct legal standard or where it fails to adequately inform the jury on the law, it will be deemed erroneous.  *Cobb v. Pozzi*, 363 F.3d 89, 112 (2nd Cir. 2004).

**3.      Prejudicial Misconduct by Opposing Counsel**

A new trial may be ordered where the opposing counsel committed misconduct at trial that made it "reasonably probable that the verdict was influenced by prejudicial statements." *California Sansome Co. v. United States Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995); *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 264 (3rd Cir. 1995), *cert. denied,* 516 U.S. 915, 116 S.Ct. 303 (1998) (counsel's conduct "permeated" the trial such as constant argument with the court in front of the jury, commenting on witness veracity, etc.)  Some courts require that the moving party make a "concrete showing that the misconduct of the counsel consistently permeated the entire trial from beginning to end." *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997).  Thus, it is within the court's sound discretion to determine whether a new trial should be granted based on counsel "misconduct."

**B.      Evidence of Accord and Satisfaction Affirmative Defense**

**1.      The Parties' Positions**

Defendant contends there was insubstantial evidence to support Plaintiff's contention that there was no meeting of the minds or acceptance of Defendant's offer to compromise and pay Plaintiff a reduced consulting fee of $150,000 under the contract.  Defendant argues that plaintiff only offered "self-serving" testimony on the stand that he "did not agree to accept just $150,000, which was impeached.  Defendant claims that while Plaintiff's contradictory testimony given at trial (that when he read the March 25, 2005, correspondence he did not understand that Ms. Thompson was offering him a reduced payment of $150,000 for the Fresno project) is evidence, it is insubstantial evidence because it is overwhelmingly contradicted by other evidence, but not limited to:

-        Plaintiff's prior testimony that he understood from the March 25, 2005, letter that Ms. Thompson was offering him a reduced payment of $150,000 for the Fresno project;

-        Plaintiff's own actions of accepting and cashing all three checks; and

1         -        Plaintiff's inactions (i.e., his failure to reject Ms. Thompson's offer to compromise and

2                inform her he was not willing to accept a reduced payment of $150,000.00 on the

3                contract). (Doc 99, Moving papers p. 7-8.)

4 Defendant requests the Court independently assess the evidence and assess for itself the credibility of

5 the witnesses and conclude that the parties entered into an accord and satisfaction. Defendant contends

6 there was absolutely no evidence to support a finding by the jury on Plaintiff's claim that Ms.

7 Thompson's March 25, 2005, correspondence was fluff and a paper created to phony up her file.[1]

8        Plaintiff argues that it was defendant's burden of proof on the claim of accord and satisfaction.

9 It is therefore irrelevant whether KAAP introduced evidence that there was no meeting of the minds.

10 Plaintiff had no obligation to introduce any evidence that there was no meeting of the minds. Further,

11 plaintiff argues that whether the "self-serving" testimony of Richard Sherman, which stated that he did

12 not agree to accept just $150,000, was sufficient, was an issue for the jury. The jury is entitled to assess

13 the credibility of the witnesses. Further, plaintiff argues, and cites to, additional evidence introduced at

14 trial from which the jury could conclude that there was no meeting of the minds on an accord and

15 satisfaction. (Doc. 111, Opposition p.3-4.) Plaintiff notes that while defendant relies heavily upon the

16 e-mail, Trial Exh. 19, from Laura Thompson, and that Mr. Sherman cashed the checks, Laura Thompson

17 testified that the contents of the email was not discussed with Richard Sherman and the three checks

18 were unaccompanied by a letter.

19        **2.**        **Verdict is not Against the Clear Weight of the Evidence**

20        Defendant claimed an affirmative defense of an accord and satisfaction. As an affirmative

21

---

22 [1] Defendant attempts to introduce statements made by at least juror to defense counsel, in post-trial interviews, as to the evidence the jury found determinative on the issue of accord and satisfaction. (See Doc. 100, Declaration Amanda Glenn ¶4.) Federal Rule of Evidence 606(b) precludes this kind of evidence. Rule 606(b) bars jury testimony regarding the

23 method or arguments of jury's deliberations, the effect of a particular thing upon an outcome in the deliberations, the mind set or emotions of any juror during deliberation and the testifying juror's own mental process during the deliberations. *United*

24 *States v. Ruggiero*, 56 F.3d 647, 652 (5th Cir.), *cert. denied*, 516 U.S. 951 (1995). Fed.R.Evid. 606(b) permits inquiry in the fact of external influences upon the jury. Rule 606(b). But once the existence of external influences upon the jury has

25 been established, neither the court nor counsel may inquire into the subjective effect upon the particular jurors. *United States v. Bassier*, 651 F.2d 600, 603 (8th Cir.) *cert. denied*, 454 U.S. 944 (1981). Defendant offers the juror statements to impeach

26 the subjective, deliberative process of the jury. Rule 606(b) specifically precludes admission of such evidence for this purpose. Accordingly, the statements are inadmissable, and are not be considered by the Court. Further, plaintiff objects

27 to the statements, as contained in Ms. Glenn's declaration, as hearsay, among other grounds. The hearsay objection is sustained.

28

1  defense, defendant bore the burden of proof. *See Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir.1993)

2  ("In every civil case, the defendant bears the burden of proof as to each element of an affirmative

3  defense.")

4       The evidence from each side, of whether there was an accord and satisfaction, was contradictory.

5  Defendant relied upon the March 25, 2005 e-mail from Laura Thompson to Rick Sherman (Trial Exh.

6  19) as memorializing the accord and satisfaction which was purportedly reached at the Sacramento

7  meeting in early March.  Ms. Thompson testified as to the purported agreement - a flat $150,000 paid

8  in three installments.

9       On the other hand, plaintiff's testimony supported a different possible "accord and satisfaction."

10  Plaintiff offered contradictory evidence of their agreement - Mr. Sherman testified that previously in

11  November 2004, in Newport Beach, the parties agreed to a $150,000 payment and the balance to be paid

12  from other projects. (See Trial Exh. 14.)

13       Q: The $150,000 now and the balance paid out of other projects, who proposed that?

14       A: Laura

15       Q: In Newport Beach, did you accept that?

16       A. Yes.

17       . . .

18       Q. At the time you were discussing your compensation in Newport Beach with Ms. Thompson,
    did you have any concerns that you wouldn't be paid your full commission?

19

20       A. No.

21  (Doc. 112, Exh. B p. 66 of the Trial Transcript.)

22       There was contradictory testimony as to whether the parties even discussed the $150,000 in the

23  Sacramento meeting.  Mr. Sherman testified that he did not have specific conversation with Ms.

24  Thompson in March 2005 regarding his commission at the March 2005 Sacramento meeting, which she

25  purportedly memorialized in the March 25, 2005 e-mail (Trial Exh. 19).

26       Q:    Did you have a detailed discussion with Ms. Thompson about the payment to KAAP for
             its consulting services for the Fresno County project?

27

28       A.    It didn't have  - - we didn't have a specific conversation on that.

5

1    Q:    What do you recall discussing?

2    A.    That I recall that  - - I recall her telling me that she still had not earned a
           profit on the project.

3

4    Q.    Any other discussions about changing any type of payment arrangements that you had
           sent to her in the November 20th letter that you just testified about?

5    A.    No.

6    (Doc. 112, Exh. B p. 66 of the Trial Transcript.)

7         Mr. Sherman testified that Ms. Thompson did not offer to pay KAAP $150,000 at the March

8    2005 meeting in Sacramento.  (Doc. 112, Exh. B p. 135-136 of the Trial Transcript.)  Mr. Sherman also

9    testified that Ms. Thompson's March 25, 2005, e-mail (Trial Exh. 19) did not reflect there conversation

10   in Sacramento.

11        Indeed, Ms. Thompson testified that she had offered to KAAP $150,000 now and the balance

12   through the Western Facilities agreement:

13   Q:    And you were talking to him during particular meeting about paying him $150,000 and
           paying him the balance through his Western Facilities contract that he was working on
14         other projects, right?

15   A.    Yeah, I proposed that.

16   (Doc. 112, Exh B p. 34 of the Trial Transcript.)  Other testimony by Ms. Thompson indicated that the

17   parties did not agree to the payment where KAAP would be paid the full 5% commission:

18   Q.    . . . You clearly understood when you read this November 29th letter, did you not,
           Ms. Thompson, that Mr. Sherman wanted to be paid the entire 5 percent that was
19         owed to him under the County of Fresno consulting agreement?

20   A.    I understood, but didn't agree.

21   (Doc. 112, Exh. B p. 36 of the Trial Transcript.)

22   Thus, the evidence submitted by each side showed different versions of an "accord and satisfaction."

23        Defendant argues that the jury improperly rejected its version of the accord and satisfaction.

24   Defendant argues there was no evidence to support a finding by the jury on Plaintiff's claim that Ms.

25   Thompson's March 25, 2005, correspondence was fluff and a paper created to phony up her file.

26        First, there was no "finding" by the jury that the March 25, 2005, correspondence was fluff.

27   What the jury found was that no accord and satisfaction existed.  (Doc. 94, Special Verdict, Question

28   6.)

1       To reject the affirmative defense of accord and satisfaction, the jury, however, was not required

2   to believe that March 25, 2005 e-mail was "fluff and to phony up her file." The jury could find there

3   was not an accord and satisfaction based on the failure to agree. Indeed, as discussed above, the

4   evidence was contradictory as to what the parties agreed. Both parties testified, and documentary

5   evidence was introduced, which was contradictory as to each party's position. The jury could believe

6   the March 25, 2005 e-mail was fluff or it could not. The jury could consider whether plaintiff's failure

7   to respond to the e-mail and then cashing all three checks was consistent, or inconsistent, with Mr.

8   Sherman's testimony that he believed he would get $150,000 plus quarterly payments.

9       The burden of proof on the affirmative defense remained with defendant. An entirely plausible

10   inference from the evidence is that the jury believed Mr. Sherman's testimony about what the parties

11   later agreed, and defendant's burden, therefore, had not been met. Indeed, the majority of the testimony

12   and evidence during the trial related to whether an accord an satisfaction existed. To determine whether

13   an accord and satisfaction existed, the jury had to resolve credibility issues between the witnesses,

14   primarily Mr. Sherman and Ms. Thompson. The jury properly exercised its responsibility to resolve any

15   conflicts in the testimony, to weigh the evidence and the credibility of witnesses, and to draw reasonable

16   inferences from all of the evidence. *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d

17   1422, 1435 (9th Cir.1996).

18       Defendant argues that the verdict is against the clear weight of the evidence. The Court may

19   grant a new trial if, in its view, the verdict is against the clear weight of the evidence. *Landes Const.*

20   *Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). The Court finds that verdict

21   is not against the clear weight of the evidence. Based on the evidence, it is possible for the jury to believe

22   Mr. Sherman and disbelieve Ms. Thompson, and it is probable that that is what the jury did. Indeed, in

23   the Court's independent assessment of the evidence, finds sufficient evidentiary support for the verdict.

24   The verdict is not against the clear weight of the evidence. *Murphy v. City of Long Beach*, 914 F.2d 183,

25   187 (9th Cir. 1990) ("It is clear that the district judge had the right, and indeed the duty, to weigh the

26   evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial

27   evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence,

28   or ... to prevent ... a miscarriage of justice.") The Court is "not left with the definite and firm conviction

1   that a mistake has been committed by the jury." *Landes Const. Co. v. Royal Bank of Commerce*, *supra*,

2   833 F.2d at 1371-72.

3   **C.      Erroneous or Omitted Jury Instructions**

4         **1.      Erroneous Jury Instruction no. 35**

5         Defendant argues that it is entitled to a new trial due to the reading of an erroneous jury

6   instruction to the jury and that the Court's curative efforts were insufficient to cure the error.

7         Jury Instruction no. 35, as originally read to the jury, stated:

8       "A defendant asserting the defense of accord and satisfaction must establish the following:
    (1)     that there was a bona fide dispute between the parties;

9       (2)     that the debtor tenders some amount subject to the condition that it was to be in full
         satisfaction of the creditor's unliquidated claim; and

10      (3)     that the creditor accepts what was tendered as payment in full of the particular claim in
         issue."

11

12        After the jury instruction had been read to the jury, and after Plaintiff's counsel finished with his

13  closing statement, the jury took a break.  Once the jury left the courtroom, defense counsel

14  brought an error to the Court's attention.  The instruction was corrected by adding "disputed

15  or" into the second element of jury instruction no. 35.  The curative instruction was then read to the jury

16  after the recess.  The curative instruction, as read, stated:

17      "A defendant asserting the defense of accord and satisfaction must establish the following:
    (1)     that there was a bona fide dispute between the parties;

18      (2)     that the debtor tenders some amount subject to the condition that it was to be in full
         satisfaction of the creditor's **disputed or** unliquidated claim; and

19      (3)     that the creditor accepts what was tendered as payment in full of the particular claim in
         issue." (Emphasis added.)

20

21        Defendant claims the Court's correction of the subject jury instruction was insufficient for the

22  following reasons:

23       1)     The Court did not make it clear to the jurors that they had to expunge the former

24           erroneous instruction; and

25       2)     The Court did not make it clear to the jurors that they had to expunge Plaintiff's

26           counsel's mis-characterization of the law that because Plaintiff's claim was liquidated

27           in amount it could not be the subject of an accord and satisfaction.

28  Defendant argues that under Missouri law "[a]n accord and satisfaction is a contract for the settlement

1  of a disputed or unliquidated claim for an amount less than that claimed by the creditor." *Cranor v.*

2  *Jones Co.*, 921 S.W.2d 76, 81 (Mo.App. E.D. 1996).

3  Plaintiff argues that defendant did not timely object to the erroneous instruction. Counsel had

4  copies of the jury instructions before they were read and had an opportunity to object on the record to

5  the instructions, and in fact did so. Defendant did not object to Instruction no. 35. Defendant waived

6  the objection by not timely making the objection. While defendant argues that the court failed to order

7  the jurors to expunge the original Jury Instruction no. 35, defendant made no request of the Court that

8  the jury be ordered to do so.

9  **2.    Analysis of Whether Jury was Mislead or Confused**

10  Under the *Erie* doctrine, *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),

11  state law is not controlling over the Federal Rules of Civil Procedure. State law is not controlling on

12  matters covered by Rule 51.[2] Federal courts also follow their own rules, regardless of state legislation

13  and practice, in the manner and method of giving instructions to the jury. *Seltzer v. Chesley*, 512 F.2d

14  1030, 1034 (9th Cir. 1975).

15  Defendant relies upon *Seltzer v. Chesley*, 512 F.2d 1030 (9th cir. 1975) for the proposition that

16  the Court was required to order the jurors to expunge the erroneous statement from their minds.

17  "Erroneous instructions can be corrected by the trial judge only by expressly correcting them and by

18  directing the members of the jury to expunge the erroneous statements from their minds." *Seltzer v.*

19  *Chesley*, 512 F.2d 1030, 1035 (9th Cir. 1975). In *Seltzer*, the trial court erroneously read a jury

20  instruction on contributory negligence employing terms "will" and "cannot" rather than the word

21  "should." After the erroneous instruction was read, counsel objected and the Court corrected the words

22

23  [2] Rule 51 states in pertinent part: "(b) Instructions.
      The court:

24  (1) must inform the parties of its proposed instructions and proposed action on the
      requests before instructing the jury and before final jury arguments;

25

26  (2) must give the parties an opportunity to object on the record and out of the jury's
      hearing before the instructions and arguments are delivered; and

27  (3) may instruct the jury at any time before the jury is discharged."

28

in the instruction.  After this curative instruction, counsel again objected and noted that the Court failed to include language as to proximate cause.  The Court then corrected the corrected instruction and instructed the jury on proximate cause in relation to contributory negligence.  On appeal, error was claimed for giving the erroneous instruction and for undue emphasis of contributory negligence to the jury by the two curative instructions. *Id.* at 1031.  The Ninth Circuit held that the trial judge's erroneous instructions were properly and effectively cured. "The trial judge specifically called the jury's attention to the error and to the correct law. He distinctly and particularly pointed out what the law was and, in our opinion, left no doubt in the minds of the members of the jury on that point. Clear and unmistakable words were used in his curative instructions, and the error itself was not repeated or emphasized." *Id.* At 1035.  In *Seltzer*, the trial court did not expressly direct the jury to expunge the erroneous instruction. Rather, the trial court merely informed the jury of the error and than stated the correct statement of the law.  The trial court's conduct was upheld.

The case relied upon by *Seltzer*, *Puget Sound Nav. Co. v. Nelson*, 59 F.2d 697, 700 (9th Cir. 1932), stated that "expungement" was but one way to cure an erroneous instruction which had been corrected:  "But nowhere did the trial judge specifically correct or repudiate the erroneous exposition of the rule as to the mandatory effect of the statute. Nowhere did he bid the jury expunge from their minds such erroneous statements, and be guided only by the correct instruction." Jury instructions must be considered as a whole. *Seltzer v. Chesley*, 512 F.2d 1030, 1035 (9th Cir. 1975).

An express directive to the jury "to expunge" is not required, as long as the error and the correction are made clear to the jury.  Here, defense counsel called the erroneous instruction, with the missing two words, to the Court's attention.  The Court added the words and then when the jury next returned to the Courtroom, the Court instructed the jury as follows:

> "THE COURT: All right.  We are back on the record.  Everyone is present, including the jury, and we are ready for Mr. McGee.
>
> That's right, ladies and gentlemen, there was one instruction I want to reread because there were two words left out, and if you want the jury instructions, of course, all you need to do is tell us and we will send them in, and the words will be included, but I want to read the entire instruction.  It will take just a few seconds." (Doc. 112-2, Exh. D p. 78 of the Trial Transcript.)

The Court then immediately read the corrected instruction to the jury.  Thus, the Court alerted the jury

10

to the error, informed it that two words were missing, read the corrected instruction to the jury, and told

the jury that the written instructions were available for use during deliberations.  Indeed, the jury so

requested the instructions for use in deliberations and the written instructions were sent into the jury

room.

In addition, Jury Instruction no. 36, stated the correct language:

> "An 'accord' is an agreement for the settlement of some previously existing claim by a substituted performance. 'Satisfaction' is the performance of such an agreement. Thus, an 'accord and satisfaction' is a contract for the settlement of **a disputed or** unliquidated claim for an amount less than that claimed by the creditor." (Emphasis added)

The jury instruction was properly and timely corrected, without undue emphasis and was consistent with

the remainder of the instructions on accord and satisfaction.  The trial judge is ultimately responsible

for the conduct of the litigation, and is also responsible for ensuring that a party is not a victim of a

miscarriage of justice.  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.1990).

Defendant further argues that the jury was mislead by plaintiff's closing argument based on the

erroneous instruction.  Defendant argues plaintiff's counsel inappropriately argued that because

Plaintiff's claim was liquidated in amount, it could not be the subject of an accord and satisfaction.

Defendant's counsel immediately objected on the grounds that Plaintiff's counsel was mischaracterizing

the law and the Court sustained the objection. However, it is claimed that Plaintiff's counsel continued

to restate the same erroneous and inappropriate argument throughout his closing statement and the Court

permitted it.

Plaintiff's counsel stated during his closing statement:

> BY MR. LOGOLUSO: What is KAAP owed under the consulting agreement? There is our contract price. 12,034,276. The consulting fee under the contract is 5 percent. Here is the total amount that's owed, $601,713.80. They have paid to him $150,000. The balance owing is $451,713.80. Now, this is important, because this is a mathematical calculation to reach this number. It's the contract price that everybody knows, it's 5 percent of whatever that is. And then if you subtract how much is paid, you know exactly what is due and owing. What do we call this type of figure? That's called a liquidated figure. It means it's a figure that's certain. You know what it is. It's not up for speculation.
> Now, you were listening to the Judge talk about those jury instructions, and I will talk about them in a second, right, part of an accord and satisfaction's elements is there is a dispute, but it has to be an unliquidated dispute. This is a liquidated dispute.

1    MR. McGEE: Objection, your Honor. That mischaracterizes –

2    THE COURT: Sustained.

3    MR. LOGOLUSO: The evidence, we believe, clearly shows that this
     amount was due and owing and the calculation was clearly able to be
4    made July 27, 2004.
     (Doc. 112-2, Exh. D, pp. 54:19-55:17 of the Trial Transcript.)
5

6    Later, Plaintiff's counsel continued his argument by stating:

7    MR. LOGOLUSO: Let's talk about some of the jury instructions as they
     relate to accord and satisfaction and the evidence in this case. This is the
8    law with regard to accord and satisfaction. It says the defendant asserting
     a defense of accord and satisfaction must establish the following: One,
9    that there was a bone fight [sic] dispute between the parties. … The
     debtor tenders some amount subject to the condition that it was to be paid
10   in full satisfaction of the creditor's unliquidated claims. You make the
     determination of whether or not the amount owing Mr. Sherman was
11   liquidated or unliquidated. It's liquidated. … Number two, this particular
     claim is liquidated. (Doc. 112-2, Exh. D, pp. 65-66 of the Trial
12   Transcript.)

13        Defendant argues that the erroneous instruction, coupled with plaintiff's counsel's argument, may

14   have confused and misled the jury.

15        In closing argument, counsel is entitled to rely upon the jury instructions. The jury instructions

16   included a definition of the term "unliquidated:" "The definition of the word 'unliquidated means 'Not

17   previously specified or determined.'" (Doc. 96, Jury Instruction 42.) The Court does not find that the

18   jury instructions on accord and satisfaction were ambiguous, misleading or confusing. Plaintiff's

19   counsel is entitled to highlight whether the dispute was a liquidated or unliquidated claim. Counsel is

20   entitled to argue, as the evidence showed, the definitions in the jury instructions. Further, the jury was

21   instructed that the argument of counsel is not evidence. At most, counsel argued that the jury should

22   determine whether the claim was liquidated or unliquidated, and then determine if accord and

23   satisfaction would apply to the claim. During deliberations, the jury had the benefit of the corrected jury

24   instructions. Thus, the Court does not find the jury was confused or misled. Because "the jury's verdict[

25   ] find[s] substantial support in the record and lie[s] within the range sustainable by the proof," any error

26   in instruction was harmless. *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 787

27   (9th Cir. 2006).

28   /////

                                                    12

1      **3.     Excluded Instructions**

2      Defendant contends that the Court failed to give two requested instructions.  It cites a Sixth

3 Circuit case for a test as to whether the failure to give the instruction is reversible error.  A district court's

4 refusal to give jury instruction constitutes reversible error if: (1) the omitted instruction is not a correct

5 statement of law; (2) the instruction is not substantially covered by other delivered charges; and (3)

6 failure to give the instruction impairs the requesting party's theory of the case. *Webster v. Edward D.*

7 *Jones & Co., L.P.*, 197 F.3d 815 (6th Cir. 1999).[3]

8               **(a)     Jury Instruction No. 40**

9      The Court gave Instruction no. 40 which stated as follows:

10           "There is no accord and satisfaction unless payment is tendered on the
          express condition that it be accepted in full satisfaction of the claim. The

11           condition that acceptance means full satisfaction must be made clearly
          apparent to the creditor."

12

13 Defendant proposed a jury instruction which contained an additional sentence which the Court did not

14 include in the instruction given to the jury:

15           "There is no accord and satisfaction unless payment is tendered on
          express condition that it be accepted in full satisfaction of the claim. **If**

16           **the creditor cashes a check tendered in payment of account under**
          **such condition, an accord and satisfaction results notwithstanding**

17           **protests on creditor's part.** The condition that acceptance means full
          satisfaction must be made clearly apparent to the creditor." (Emphasized

18           language not given in instruction)

19 Defendant assigns error for failing to include the additional sentence in this instruction because the

20 statement quoted Missouri law. Defendant argues that plaintiff confirmed he understood Defendant was

21 _____

22      [3] The Ninth Circuit has not adopted this test.  "[F]ailure to give a requested jury instruction is not reversible error
so long as the trial judge gives adequate instructions on each element of the case." *Van Cleef v. Aeroflex Corp.*, 657 F.2d

23 1094, 1099 (9th Cir.1981) (citation omitted);  "I]t is not reversible error to reject a defendant's proposed instruction in [her]
theory of the case if other instructions, in their entirety, adequately cover that defense theory." *United States v. Jackson*, 72
F.3d 1370, 1380 (9th Cir.), *cert. denied*, 517 U.S. 1370 (1995) (criminal case); *Swinton v. Potomac Corp.*, 270 F.3d 794,

24 802 (9th Cir.2001)("In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the
substance of the applicable law was [not] fairly and correctly covered"), *cert denied*, 535 U.S. 1018 (2002).  If, however, the

25 error in the jury instruction is harmless, it does not warrant reversal. *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005).
Further, in *Webster*, the Court refused to give an instruction on the mitigation of damages affirmative defense and failed to

26 instruct on this defense.  The test used by the Sixth Circuit was to determine whether the refusal to give an instruction was
reversible error.  Here, the instruction was given on defendant's affirmative defense of accord and satisfaction. Defendant

27 argues that the instruction was **incomplete.**

28

1   offering him a reduced consultant fee of $150,000 on the contract. Thus, it was imperative that the jury

2   be instructed that the effect of cashing the checks could not be avoided by forming a contrary subjective

3   intent and claiming lack of meeting of minds, which is exactly what Plaintiff did in this instance (i.e. he

4   "never agreed to accept just $150,000.00" on the contract and that he believed the March 25, 2005, offer

5   to compromise was fluff, and a phony file building document).

6     The language of the instructions given by the district court need not conform to the formulation

7   proposed by the defendant so long as it "fairly and adequately embod[ies] the relevant law regarding the

8   issues presented." *U.S. v. Sarno*, 73 F.3d 1470, 1485 (9th Cir. 1995) (rejecting proposed instructions

9   which were argumentative or unnecessary), *cert. denied*, 518 U.S. 1020 (1996). "[A] court is not

10  required to accept a proposed instruction which is manifestly intended to influence the jury towards

11  accepting the evidence of the defendant as against that of the prosecution." *U.S. v. Sarno*, 73 F.3d at

12  1485.

13    Defendant objected to the deletion of the sentence.  At oral argument on the jury instructions,

14  the court stated that it was concerned that the instruction was argumentative and not a neutral statement

15  of the law.  The Court expressed concern that the additional sentence did not accurately represent the

16  evidence at trial.  Indeed, the evidence presented at trial was disputed as to what the offer of compromise

17  was:

18      (1) a flat $150,000 paid in three $50,000 installments, or

19      (2) $150,000 paid in three $50,000 installments plus the balance paid in

20       quarterly installments.

21  (See Exh. 112, Exh. B p. 63-64 of the Trial Transcript (The $150,000 now and the balance paid out of

22  other projects) Exh 112, Exh. C, p. 34 of the Trial Transcript.))  Thus, the proposed additional sentence,

23  "If the creditor cashes a check tendered in payment of account under such condition, an accord and

24  satisfaction results notwithstanding protests on creditor's part," was inconsistent with the evidence.

25      **(b)**  **Jury Instruction no. 46**

26    Instruction no. 46 as read to the jury stated:

27      "A person may accept an offer by words or by conduct or by a
    combination of the two that show agreement to the terms of the offer.

28

> A determination of whether an offeree accepted an offeror's offer depends upon what is actually said and done."

Defendant argues that it is entitled to a new trial because the instruction failed to fully state Missouri law. Defendant proposed that the instruction include the following language:

> "A person may accept an offer by words or by conduct or by a combination of the two that show agreement to the terms of the offer.
>
> A determination of whether an offeree accepted an offeror's offer depends upon what is actually said and done **and not upon the understanding or supposition of one of the parties**."(emphasis added).

Defendant argues the language was significant to address the meeting of the minds and to address plaintiff's undisclosed assumption or hidden intentions that he really was not agreeing to a reduced sum.

In the jury instruction conference, the Court stated that it would not add a negative statement to a positive statement of the law, as it would be confusing to the jury.

Here, a new trial is not warranted for failure to include the negative or "opposite" of what is included in the instruction. The instruction, as given, stated that an acceptance was determined by "what is actually said and done." The sentence, as read to the jury, adequately covered Defendant's theory of defense - that there is an acceptance that was communicated. Plaintiff's subjective intent was for argument.

As discussed *infra*, there was contradictory evidence on whether there was an acceptance of an offer to pay $150,000 and what that offer was. A trial judge should not pick and choose from the evidence and tell the jury what evidence to consider on an issue. That is the function of counsel. *Belmontes v. Woodford*, 359 F.3d 1079, 1086 (9th Cir. 2004)*, cert. denied*, 544 U.S. 945 (2005). An error in instructing the jury in a civil case does not require reversal if that error is harmless. *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 784 (9th Cir. 2006).

**D.     Attorney Misconduct**

Defendant assigns two forms of misconduct to plaintiff's counsel. First, defendant complains that plaintiff's counsel inappropriately repeatedly misstated the facts and law that plaintiff's claim was "liquidated in amount," and therefore could not be subject to an accord and satisfaction. Second, defendant complains that counsel introduced evidence in violation of in limine orders as to defendant's

15

1   financial resources and its profits on the project.

2       A new trial may be ordered where the opposing counsel committed misconduct at trial that made

3   it "reasonably probable that the verdict was influenced by prejudicial statements." *California Sansome*

4   *Co. v. United States Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995).  The "totality of the circumstances"

5   and factors such as "nature of the comments, their frequency, their possible relevancy to the real issue

6   before the jury, the manner in which the parties and the court treated the comments, the strength of the

7   case, and the verdict itself." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (internal

8   quotes omitted)*, cert. denied*, 537 U.S. 1110 (2003).

9       **1.    Plaintiff's Counsel reference to "Liquidated Amount"**

10      Defendant argues that Plaintiff's counsel inappropriately harped on the theme that because

11  Plaintiff's claim was liquidated in amount, it could not be the subject of an accord and satisfaction.

12  (Doc. 99, Moving papers p.9:22-25 (and the transcript citations therein.)   Defendant argues that

13  plaintiff's counsel continued misstating the law during closing argument, which and was not an

14  inadvertent mistake.  The jury returned a verdict within ninety minutes.  The timing of the misconduct

15  and the speed of the jury's verdict also demonstrate that the Court's sustaining Defendant's objection

16  did not ameliorate the prejudice.

17      Plaintiff notes that defendant complains about four statements in counsel's closing argument

18  related to the term "liquidated amount," (1) stating the amount owed plaintiff is a liquidated amount,[4]

19  (2) informing the jury that an unliquidated dispute was an element of accord and satisfaction,[5] (3)

---

23      [4] In closing argument, counsel stated: "What is KAAP owed under the consulting agreement? There is our contract price. 12,034,276. The consulting fee under the contract is 5percent. Here is the total amount that's owed, $601,713.80. They

24  have paid to him $150,000. The balance owing is $451,713.80. . . Now, you were listening to the Judge talk about those jury instructions, and I will talk about them in a second, right, parts of an accord and satisfaction's elements is there is a dispute,

25  but it has to be an unliquidated dispute. This is a liquidated dispute." (Doc. 112-2, Exh. D, p. 54-55 of Trial Transcript.)MR. McGEE: Objection, your Honor. That mischaracterizes –

26                  THE COURT: Sustained.

          MR. LOGOLUSO: The evidence, we believe, clearly shows that this amount was due and owing and the

27  calculation was clearly able to be made July 27, 2004.

28      [5] See previous footnote.

16

1    reading the definition of unliquidated in jury instruction no. 42,[6] and (4) a summation of what plaintiff

2    contended were the important elements of accord and satisfaction.[7]

3         Here, the purported prejudicial statements were made in plaintiff's counsel's closing arguments.

4    The challenged arguments mainly were to counsel's reading from or referring to the jury instructions.

5    Counsel is entitled to emphasize the jury instructions, or part thereof, in closing arguments.  A closing

6    argument that tracks the jury instructions is proper. *Settlegoode v. Portland Pub. Schools*, 371 F.3d 503,

7    519 (9th Cir.), *cert. denied*, 543 U.S. 979 (2004).  Thus, counsel's argument referring to instructions are

8    not misconduct.

9         Further, the only remaining statement which could be alleged as misconduct is counsel's

10   argument that, "This is a liquidated dispute." (See Footnote 4.)  However, counsel relied upon erroneous

11   instruction no. 35, and his argument tracked the language in the instruction.   The inaccuracy in

12   instruction no. 35 was corrected following counsel's closing argument.  Thus, the Court does not find

13   misconduct.

14        **2.        Evidence of Profits or Financial Condition**

15        Defendant argues that plaintiff's counsel introduced inadmissible and prejudicial evidence in

16   violation of motion in limine no. 7. In Limine no. 7 excluded evidence and testimony regarding

17   defendant's financial resources including its profits on the subject project. Plaintiffs' counsel violated

18   the in limine ruling by introducing evidence of defendant's "financial resources in general," and the size

19   of the defendant.  Defendant argues that in opening statement, counsel referred to similar companies to

20   defendant as "large global companies," "very large companies," in "lucrative field of energy services

21   contracts."  During Mr. Sherman's testimony, Mr. Sherman referred to defendant as a "huge engineering

22   company," "big," and "world wide."  Moreover, plaintiffs counsel published to the jury an inadmissible

23   Exhibit, Exh. 32, which showed the project was $17.3 million and that defendant had made a $4.3

24

25        [6] Counsel stated in closing "Let me read to you the definition of unliquidated. This is the law.  It's jury instruction 42. The definition of the word unliquidated means not previously specified or determined."  (Doc. 112-2, Exh. D, p. 56:7-10 of Trial Transcript.)

26

27        [7] In discussing the elements of accord and satisfaction, counsel referred to a jury instruction: "The debtor tenders some amount subject to the condition that it was to be paid in full satisfaction of the creditor's unliquidated claims.  You make the determination of whether or not the amount owing Mr. Sherman was liquidated or unliquidated.  It's liquidated." (Doc. 112-2, Exh. D, p. 66:7-11 of Trial Transcript.)

28

1  million profit on the project.  Defendant argues that this was improper conduct designed to appeal to the

2  jury's passions and prejudice against large corporations.

3      Plaintiff argues it would be naive to believe the jury did not infer defendant has a "large"

4  company because evidence was introduced that the project size was $12 million.  Further, plaintiff

5  argues that defendant's main witness, Laura Thompson, testified as to the large size of defendant: it is

6  "made up of eight or nine global practices."  Defense counsel questioned Mr. Sherman on the "lucrative

7  opportunity" of the Fresno County project.  Plaintiff argues that these merely frame and describe the

8  parties and players involved.  None of these statement revealed defendant's financial resources.  In

9  addition, Joint Exh. 73, admitted into evidence, was the Statement of Qualifications by defendant given

10  to the County of Fresno.  The Statement of Qualifications contained information about the structure of

11  defendants, its offices, its earning capacity, and other multimillion dollar projects it was involved in

12  performing.

13      Further, plaintiff argues that the publishing of Exh. 32 was an inadvertent mistake.  Counsel

14  disclosed to the court, and outside the presence of the jury that counsel wished to publish "Exhibit 33"

15  to discuss engineering hours, but it had "gross margins and profit margins" and he did not want to

16  publish that to the jury.  Exhibit 33 was a joint exhibit and already in evidence.  Counsel erroneously

17  referred to Exhibit 33 when he meant Exhibit 32.  Exhibit 32 was published and defense counsel

18  objected.  The publication was brief and accidental.

19      **3.    No Misconduct Warranting a New Trial**

20      The Court does not find that misconduct permeated the trial or that the alleged misconduct

21  influenced the jury to act with prejudice or passion.  First, the evidence as to the size, financially or

22  otherwise, of the defendant was presented by both sides.  The size of the project for the County was the

23  subject of testimony on both sides.  Joint exhibits were introduced as to the size of the project, and as

24  to the size of defendant.  (See e.g, Exh 73.)  Thus, testimony or argument regarding the size of the

25  defendant or the size of project for the County was not misconduct.

26      Second, the Court does not find that publishing Exh. 32 influenced the jury to act with prejudice

27  or passion.  While publishing Exh. 32 technically violated the in limine ruling, the Court does not find

28  it was an intentional violation.  Plaintiff's counsel first sought the Court's permission to discuss the

Exhibit and the content before publishing.  There was confusion as to which Exhibit was being sought,

but Counsel fully explained what he was attempting to do and asked for permission.

> MR. LOGOLUSO: Just so that there is no confusion, your Honor, I what to start off talking about that engineering hour issue.  And one of the documents that we talked about that with Ms. Thompson, I believe it's Exhibit 33, has gross margins and profit margin.  I don't want that published to the jury.  I just as soon have Ms. Thompson refresh her recollection right now.  I don't want any confusion because I don't want the document to ever be seen by the jury.

> THE COURT: Assuming she looks at it right now, what is your issue?

> MR. LOGOLUSO: I'm going to talk about the engineering hours.

> THE COURT: Any problem?

> MR. McGEE: Isn't it already in?

> MR. LOGOLUSO: No.  I believe this would be inconsistent with Judge's order, and I want to make sure that there is no problem.  I don't want this document to be shown to anybody. I'm not asking it go in.  I want her to refresh her recollection as to the total engineering hours on this proposal.

Counsel identified the wrong exhibit number and he was actually referring to Exhibit 32, which was not

admitted into evidence and contained financial information.  Counsel published Exhibit 32 and

questioned Ms. Thompson as follows:

> Q: Now Ms. Thompson, I'm going to show you Exhibit 32.  And I would like you to take a look at that document, and have you seen that before?

> A: Yes, I have.

> Q: What exactly is this document?

> A: That was a proposal that we made that was never accepted by the County.  (Doc. 112, Exh. C, p. 10:22-24.)

Thus, while allegedly improper evidence was presented to the jury, the follow up testimony was that the

information was a proposal that was never accepted by the County.  Further, the publication was brief

in time.  Accordingly, the Court does not find that the publishing of Exh. 32 to the jury would cause, or

caused, the jury to act with passion or prejudice.

**E.      Date of the Damages**

Defendant argues that a new trial as to damages is warranted.  Defendant argues that no evidence

was adduced at trial from which the jury could conclude that the date of Defendant's alleged breach was

August 27, 2004.  The contract states that plaintiff was to paid for its services after defendant was paid by the County. Defendant argues that plaintiff introduced no evidence of when defendant was actually paid for the project. Defendant argues Ms. Thompson never testified Defendant was paid any monies within 30 days after the contract with the County was signed in July 2004. Final payment was not until 2006.

Plaintiff argued to the jury during closing arguments there was testimony that Defendant was paid monies under the schedule of values (i.e. Exhibit 34) within 30 days after the contract with the County of Fresno was signed. Plaintiff argues that the Schedules of Values (Trial Exh. 34) coupled with testimony by Ms. Thompson is sufficient evidence for the jury to conclude that payment was to be made within 30 days of the execution of the contract between defendant and the County of Fresno.

Here, the parties agree that the evidence showed the contract provided for payment to plaintiff after defendant was paid by the County.  (Trial Exh.3, §3.2 "Payment to CONSULTANT will be made promptly after ENGINEER is paid by OWNER for CONSULTANT'S services.") The parties agree that the contract with the County was executed on July 27, 2004.  Trial Exhibit 34, the Schedule of Values, showed the amount that defendant could be billed for as defendant completed portions of the project. (Doc. 112, Exh. C, Trial Transcript p.22.) Ms. Thompson testified that the Schedule of Values included consulting services.  *Id.*  There was evidence that the County would have been billed upon contract execution, July 27, 2004, and that the typical payment period was within 30 days.  (Doc. 112, Exh. C, Trial Transcript p.23-26.)  Thus, there was evidence before the jury that the contract was executed on July 27, 2004, the County was then billed and had 30 days to pay.  Thus, there was evidence before the jury for a reasonable inference that August 27, 2004 was when plaintiff should have been paid.

Defendant argues that the Schedules of Values does not require any payment at signing of the contract.  The jury, however, did not have to find that the Schedule of Values required payment within 30 days of the contract execution.  There was evidence from which the jury could *infer* that payment was to be made within 30 days.  Counsel may argue legitimate and reasonable inferences drawn from the facts in evidence.  The jury is the "constitutional tribunal provided for trying facts in courts of law." *Harper v. City of Los Angeles*, - F.3d -,  2008 WL 2718874, 7 (9th Cir. 2008).

/////

20

1

## PLAINTIFF'S MOTION FOR CALCULATION OF INTEREST

Plaintiff moves for calculation and inclusion of interest in the judgment.  Defendant does not substantively oppose the motion, except on the basis described in it motion for a new trial.

On June 19, 2008, the jury returned its verdict finding that defendant had breached the written agreement between the parties on August 27, 2007, and found that plaintiff was entitled to damages in the amount of $451,713.80.

Missouri Revised Statute §408.020 states:

> "Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts . . . "

The contract between plaintiff and defendant does not state an interest rate.  Pursuant to Missouri Revised Statute §408.020, the rate of interest is nine percent.

As proposed by plaintiff, applying a simple interest calculation based upon the finds of the jury, the Court calculates the prejudgment interest to be awarded plaintiff KAAP Industries as:

| | |
|---|---|
| Principal awarded | $451,713.80 |
| Interest accrued from 8/27/04-6/19/08 ($111.38/day times 1,391 days) | 154,929.58 |
| Per diem of $111.38 per day from June 19, 2008 until Entry of final Judgment | |

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.     The motion for a new trial by Defendant Burns & McDonnell Engineering Company, Inc. is DENIED.

2.     Plaintiff KAAP Industries is awarded prejudgment interest on the jury's verdict in the amount of $154,929.58 with per diem amount of $111.38 from June 19, 2008 until the date of final judgment is entered.

IT IS SO ORDERED.

Dated:   **August 15, 2008**              **/s/ Lawrence J. O'Neill**
                                   UNITED STATES DISTRICT JUDGE